BDB:JJT:nl

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | CRIM. NOS. 1:17-CR-00195-02 |
| | ) | -03 |
| v. | ) | |
| | ) | (CONNER, C.J.) |
| HOPE R. CARBONE and | ) | |
| DONNA M. VENTURINI, | ) | |
| | ) | |
| Defendants. | ) | (ELECTRONICALLY FILED) |

# I N F O R M A T I O N

## INTRODUCTION

1.      Defendant Hope R. Carbone resided in East Stroudsburg, Pennsylvania, and was co-owner, president, and director of D & H Marketing.

2.      Defendant Donna M. Venturini resided in East Stroudsburg, Pennsylvania and was co-owner, treasurer, and secretary of D & H Marketing.

3.      D & H Marketing was located in East Stroudsburg, Pennsylvania, and from on or about 2009 through on or about 2011 imported Victor Sinclair cigars.

4.     Jose Dominguez resided in the Dominican Republic and was owner of Victor Sinclair Cigars ("Victor Sinclair"), a cigar manufacturer located in the Dominican Republic.

5.     A business known to the United States Attorney and referred to herein as G.L. Customs Broker was a customs broker based in Chicago, Illinois.  G.L. Customs Broker assisted D & H Marketing to import Victor Sinclair cigars from the Dominican Republic.

6.     A business known to the United States Attorney and referred to herein as Retailer 1 was a retail cigar business that obtained Victor Sinclair cigars through D & H Marketing.

7.     A business known to the United States Attorney and referred to herein as Retailer 2 was a retail cigar business that obtained Victor Sinclair cigars through D & H Marketing.

8.     Beginning in or about January 2011, and continuing to the present, a business known to the United States Attorney and referred to herein as H.S. Importer was the importer of Victor Sinclair cigars.  H.E. Importer was located in Florida.

9.     From in or about January 2011, through in or about December 2012, "DH Enterprizes" of East Stroudsburg, Pennsylvania, was the distributor of Victor Sinclair cigars.

10.     DH Enterprizes was owned and operated by Hope R. Carbone and Donna M. Venturini.

### Importation of Large Cigars and Federal Tobacco Excise Tax

11.     According to federal laws, a foreign manufacturer like Jose Dominguez can only sell foreign-manufactured cigars in the United States to a permitted domestic importer. The permitted domestic importer, in turn, could sell the cigars domestically to retailers in the United States.

12.     A domestic importer of large cigars was required to have a tobacco importer permit issued by the Alcohol and Tobacco Tax and Trade Bureau (TTB).

13.     The United States imposed a tax known as a federal excise tax on large cigars the domestic importer imported into the United States.

14.    The United States Customs and Border Protection ("United States Customs") was the federal agency designated to collect federal excise taxes on imported tobacco products.

15.    Federal laws and regulations provided that the importer of large cigars or its designee, was the party responsible for the payment of federal excise taxes imposed on the imported large cigars.

16.    The excise tax on large cigars was based on "the first sales price" which was the price for which the importer sold the cigars in the United States, not the price the importer paid the foreign manufacturer for the cigar.

17.    The federal excise tax rate for large cigars was 52.75 percent of the first sale price, but not more than 40.26 cents per cigar.  26 U.S.C. § 5701(a)(2).

## COUNT 1

## CONSPIRACY TO DEFRAUD THE UNITED STATES
### (Title 18, United States Code, Section 371)

THE UNITED STATES ATTORNEY CHARGES:

18.    Paragraphs 1 through 17 above are incorporated herein by reference.

## THE CONSPIRACY

19.     Beginning in or about June 2009, the exact date unknown to the United States Attorney, and continuing until in or about December 2012, in the Middle District of Pennsylvania and elsewhere, the defendants,

### HOPE R. CARBONE

### and

### DONNA M. VENTURINI,

and others known and unknown to the United States Attorney, did conspire to commit an offense against the United States and to defraud the United States or an agency thereof in that defendants and others known and unknown attempted to evade and defeat the excise tax imposed on imported large cigars and the payment of the tax in violation of Title 26, United States Code, Section 5762(a)(3).

All in violation of Title 18, United States Code, Section 371.

## OBJECT OF THE CONSPIRACY

20.     The object of the conspiracy was for defendants and Jose Dominguez and others to profit by defrauding the United States of the

federal excise taxes associated with the sale of Victor Sinclair cigars in the United States.

## MANNER AND MEANS

21.     In or about 2009, Hope R. Carbone and Donna M. Venturini agreed with Jose Dominguez and others to import Victor Sinclair cigars manufactured in the Dominican Republic.

22.     Prior to 2009, Hope R. Carbone and Donna M. Venturini had not been involved in the importation of any type of merchandise into the United States, and Jose Dominguez knew Hope R. Carbone and Donna M. Venturini did not have any training, education, and experience in the importation of tobacco products.

23.     In 2009, Hope R. Carbone and Donna M. Venturini, with the help of another person, applied for and received an importer permit for D & H Marketing.

24.     Jose Dominguez told Hope R. Carbone and Donna M. Venturini that the two largest United States purchasers and retailers of Victor Sinclair cigars were Retailer 1 located in Pennsylvania and Retailer 2 located in Florida.

25.   Jose Dominguez also arranged for G.L. Customs Broker to assist Hope R. Carbone, Donna M. Venturini, and D & H Marketing to calculate the excise tax due for each shipment of cigars.  G.L. Customs Broker completed and submitted Form 7501 to the government.  G.L. Customs Broker also paid the excise taxes to the government on behalf of D & H Marketing.

26.   D & H Marketing executed a power of attorney authorizing G.L. Customs Broker to sign a certification on each Form 7501 attesting to the truth and accuracy of the contents of the Form 7501.

27.   In or about July 2009, D & H Marketing began importing Victor Sinclair manufactured cigars.

28.   Between on or about July 8, 2009, and through on or about January 12, 2011, D & H Marketing imported to the United States from the Dominican Republic approximately 37 shipments containing at least 18,500,000 large cigars.

29.   In furtherance of the conspiracy, for each shipment of large cigars, Jose Dominguez sent to G.L. Customs Broker a Commercial Invoice that contained a fraudulent "first sale price."

30.   The first sale price on the Commercial Invoice was fraudulent because it was a lower price than the true "first sale price" agreed to by Retailer 1 and Retailer 2.

31.   G.L. Customs Broker calculated the federal excise tax based on the lower fraudulent first sale prices that Jose Dominguez provided on the Commercial Invoices.

32.   Jose Dominguez knew that the Commercial Invoices he prepared and sent or had prepared and sent on behalf of Victor Sinclair Cigars to G.L. Customs Broker were used by the customs broker to calculate the federal excise tax due on each shipment of cigars.

33.   For each shipment of Victor Sinclair cigars, G.L. Customs Broker paid to the United States excise taxes calculated on the Jose Dominguez' fraudulent Commercial Invoices.

34.   For each shipment of Victor Sinclair cigars, G.L. Customs Broker also submitted to the United States Customs a Form 7501, Customs Entry Summary, that included the fraudulent excise tax amount.

35.   On or about the time that Jose Dominguez sent or had sent on behalf of Victor Sinclair Cigars a fraudulent Commercial Invoice to

G.L. Customs Broker, Jose Dominguez also sent or had sent on behalf of Victor Sinclair Cigars to D & H Marketing a Customer Invoice with the true first sale price.

36.    The first sale price contained in Customer Invoice included the true price which Retailer 1 and Retailer 2 had agreed to pay for the cigars.

37.    Furthermore, the Customer Invoices Jose Dominguez also sent or had sent on behalf of Victor Sinclair Cigars to D & H Marketing specifically stated the true excise tax due on each shipment.

38.    The amount of the federal excise tax specified on each Customer Invoice was higher than the excise tax amount G.L. Customs Broker had calculated from the lower fraudulent sale price on the Commercial Invoices.

39.    Between on or about July 8, 2009, through on or about January 11, 2011, D & H Marketing, with the knowledge of Jose Dominguez, used Jose Dominguez' Customer Invoices to collect from Retailer 1 approximately $2,825,615 in federal excise taxes.

40.    Between on or about July 8, 2009, through on or about January 11, 2011, D & H Marketing used Jose Dominguez'

Customer Invoices to collect from Retailer 2, approximately $1,096,971 in federal excise taxes.

41.    Between on or about July 8, 2009, through on or about January 11, 2011, D & H Marketing collected from Retailer 1 and Retailer 2 approximately $3,922,586 in federal excise taxes.

42.    Out of the $3,922,586 collected, D & H Marketing forwarded to G.L. Customs Broker only approximately $2,115,814.00 for payment to the United States Customs.

43.    In or about January 2011, Hope R. Carbone and Donna M. Venturini ceased importing Victor Sinclair cigars and began distributing Victor Sinclair cigars through their business, DH Enterprizes.

44.    In or about January 2011, H.S. Importer replaced DH Enterprizes as the importer of Victor Sinclair cigars.

45.    From in or about January 2011, through in or about December 2012, H.S. Importer, with the assistance of DH Enterprizes and others, collected federal excise taxes from Retailer 1 and Retailer 2.

46.     From in or about January 2011, through in or about December 2012, H.S. Importer did not pay over to the United States all excise taxes collected from the sale of Victor Sinclair cigars.

47.     From in or about January 2011, through in or about December 2012, Jose Dominguez, and others at his request, continued to use invoices with fraudulent prices to defraud the United States.

## OVERT ACTS

48.     On or about August 27, 2010, Jose Dominguez sent to the customs broker Commercial Invoice 23-2010, containing a lower than actual sale price for the imported large cigars.

49.     On or about September 9, 2010, D & H Marketing sent a payment of approximately $40,974.28 to the customs broker for the payment of federal excise taxes that had been calculated using Commercial Invoice 23-2010.

50.     On or about September 3, 2010, Jose Dominguez sent to the customs broker Commercial Invoice 24-2010, containing a lower than actual sale price for the imported large cigars.

51.     On or about September 16, 2010, D & H Marketing sent a payment of approximately $37,475.56 to the customs broker for the

payment of federal excise taxes that had been calculated using

Commercial Invoice 24-2010.

52.    On or about September 17, 2010, Jose Dominguez sent to the

customs broker Commercial Invoice 25-2010, containing a lower than

actual sale price for the imported large cigars.

53.    On or about September 27, 2010, D & H Marketing sent a

payment of approximately $64,723.45 to the customs broker for the

payment of federal excise taxes that had been calculated using

Commercial Invoice 25-2010.

54.    On or about October 1, 2010, Jose Dominguez sent to the

customs broker Commercial Invoice 26-2010, containing a lower than

actual sale price for the imported large cigars.

55.    On or about October 14, 2010, D & H Marketing sent a

payment of approximately $62,552.61 to the customs broker for the

payment of federal excise taxes that had been calculated using

Commercial Invoice 26-2010.

56.    On or about October 15, 2010, Jose Dominguez sent to the

customs broker Commercial Invoice 27-2010, containing a lower than

actual sale price for the imported large cigars.

57. On or about October 28, 2010, D & H Marketing sent a payment of approximately $37,681.35 to the customs broker for the payment of federal excise taxes that had been calculated using Commercial Invoice 27-2010.

58. On or about October 22, 2010, Jose Dominguez sent to the customs broker Commercial Invoice 28-2010, containing a lower than actual sale price for the imported large cigars.

59. On or about November 2, 2010, D & H Marketing sent a payment of approximately $44,754.94 to the customs broker for the payment of federal excise taxes that had been calculated using Commercial Invoice 28-2010.

60. On or about October 29, 2010, Jose Dominguez sent to the customs broker Commercial Invoice 29-2010, containing a lower than actual sale price for the imported large cigars.

61. On or about November 10, 2010, D & H Marketing sent a payment of approximately $59,698.37 to the customs broker for the payment of federal excise taxes that had been calculated using Commercial Invoice 29-2010.

62.     On or about November 5, 2010, Jose Dominguez sent to the customs broker Commercial Invoice 30-2010, containing a lower than actual sale price for the imported large cigars.

63.     On or about November 18, 2010, D & H Marketing sent a payment of approximately $26,379.76 to the customs broker for the payment of federal excise taxes that had been calculated using Commercial Invoice 30-2010.

64.     On or about November 12, 2010, Jose Dominguez sent to the customs broker Commercial Invoice 31-2010, containing a lower than actual sale price for the imported large cigars.

65.     On or about November 26, 2010, D & H Marketing sent a payment of approximately $46,597.60 to the customs broker for the payment of federal excise taxes that had been calculated using Commercial Invoice 31-2010.

66.     On or about November 19, 2010, Jose Dominguez sent to the customs broker Commercial Invoice 32-2010, containing a lower than actual sale price for the imported large cigars.

67.     On or about December 2, 2010, D & H Marketing sent a payment of approximately $58,310.74 to the customs broker for the

payment of federal excise taxes that had been calculated using Commercial Invoice 32-2010.

68.    On or about November 26, 2010, Jose Dominguez sent to the customs broker Commercial Invoice 33-2010, containing a lower than actual sale price for the imported large cigars.

69.    On or about December 6, 2010, D & H Marketing sent a payment of approximately $43,664.41 to the customs broker for the payment of federal excise taxes that had been calculated using Commercial Invoice 33-2010.

70.    On or about December 3, 2010, Jose Dominguez sent to the customs broker Commercial Invoice 34-2010, containing a lower than actual sale price for the imported large cigars.

71.    On or about December 15, 2010, D & H Marketing sent a payment of approximately $32,128.45 to the customs broker for the payment of federal excise taxes that had been calculated using Commercial Invoice 34-2010.

72.    On or about December 10, 2010, Jose Dominguez sent to the customs broker Commercial Invoice 35-2010, containing a lower than actual sale price for the imported large cigars.

73.     On or about December 24, 2010, D & H Marketing sent a payment of approximately $37,594.23 to the customs broker for the payment of federal excise taxes that had been calculated using Commercial Invoice 35-2010.

74.     On or about December 17, 2010, Jose Dominguez sent to the customs broker Commercial Invoice 36-2010, containing a lower than actual sale price for the imported large cigars.

75.     On or about December 30, 2010, D & H Marketing sent a payment of approximately $36,756.33 to the customs broker for the payment of federal excise taxes that had been calculated using Commercial Invoice 36-2010.

76.     On or about December 23, 2010, Jose Dominguez sent to the customs broker Commercial Invoice 37-2010, containing a lower than actual sale price for the imported large cigars.

77.     In or about January 2011, D & H Marketing sent a payment of approximately $49,293.60 to the customs broker for the payment of federal excise taxes that had been calculated using Commercial Invoice 37-2010.

78.     On or about October 22, 2012, Jose Dominguez and someone acting on his behalf, shipped large cigars designated for Retailer 1. H.E. Importer, with the assistance of DH Enterprizes and the fraudulent invoices prepared by Jose Dominguez and someone acting on his behalf, collected, but did not pay to the United States the full amount of excise taxes.

79.     On or about November 8, 2012, Jose Dominguez and someone acting on his behalf, shipped large cigars designated for Retailer 1.  H.E. Importer, with the assistance of DH Enterprizes and the fraudulent invoices prepared by Jose Dominguez and someone acting on his behalf, collected, but did not pay to the United States the full amount of excise taxes collected on this shipment.

80.     On or about December 10, 2012, Jose Dominguez and someone acting on his behalf, shipped large cigars designated for Retailer 1.  H.E. Importer, with the assistance of DH Enterprizes and the fraudulent invoices prepared by Jose Dominguez and someone acting on his behalf, collected, but did not pay to the United States the full amount of excise taxes collected on this shipment.

All in violation of Title 18, United States Code, Section 371.

BRUCE D. BRANDLER
UNITED STATES ATTORNEY

_8/16/17_
DATE

By: _____
JOSEPH J. TERZ
ASSISTANT U.S. ATTORNEY